UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
JAVIER SANTANA,                    :
       Petitioner,                 :
                                   :              PRISONER
       v.                          :    Case No. 3:15cv9 (DJS)
                                   :
COMMISSIONER OF CORRECTION,        :
       Respondent.                 :
```

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Javier Santana, an inmate currently confined at New Hampshire State Prison for Men in Concord, New Hampshire, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc.#1] challenging his state criminal convictions for felony murder, in violation of CONN. GEN. STAT. § 53a-54c; attempt to commit robbery in the first degree, in violation of CONN. GEN. STAT. §§ 53a-49 and 53a-134(a)(2); unlawful restraint in the first degree, in violation of CONN. GEN. STAT. § 53a-95; robbery in the first degree, in violation of CONN. GEN. STAT. § 53a-134(a)(2); and larceny in the third degree, in violation of CONN. GEN. STAT. §§ 53A-119 and 53a-124(a)(2).  State v. Santana, 89 Conn. App. 553, 554(2005) [Resp't App. A]. For the following reasons, the Court denies the petition.

I.    **Standard of Review**

This Court will entertain a petition for writ of habeas

corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  See 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in this Court.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted).  This Court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This is a very "difficult" standard to "meet."  Metrish v. Lancaster, ___ U.S. ___, 133 S. Ct. 1781, 1786 (2013).

Clearly established federal law is found in holdings, not dicta, of the United States Supreme Court at the time of the state court decision.  See Howes v. Fields, 565 U.S. 499, 505

(2012).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  See Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008).  It is not enough that the state court decision is incorrect or erroneous. Eze v. Senkowski, 321 F.3d 110, 124-25 (2d Cir. 2003).  Rather, the state court application of clearly established law must be objectively unreasonable, a substantially higher standard. Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Williams v. Taylor, 529 U.S. 362, 389 (2000)

3

("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

When reviewing a habeas petition, this Court presumes that the factual determinations of the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  Id. Moreover, this Court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## II.   **Procedural History**

A. Criminal Trial and Direct Appeal

The petitioner was tried jointly with his co-defendant, Gary Cooke, in a fifty-six count substitute information charging them with felony murder, robbery in the first degree, attempt to commit robbery in the first degree, larceny in the third degree, and unlawful restraint in the first degree.  Santana, 89 Conn. App. at 555.  The Connecticut Appellate Court set forth the following facts underlying his convictions:

> On November 20, 2001, [Gary Cooke], along with his fellow perpetrators, Javier Santana and Abimeal Quinones, entered a garage party at 68 Alice Street in Bridgeport wearing masks and armed with guns, ordered the guests to lie face down on the ground and

4

> instructed them to remove their belongings. The
> perpetrators began taking money, jewelry and other
> items from the guests and placing them in a bag. The
> perpetrators threatened that if anyone moved or looked
> up, they would be killed. After approximately twenty
> minutes, two officers from the Bridgeport police
> department, Gilbert Delvalle and Leonard Alterio,
> arrived at the garage, announced their presence and
> opened the door to the garage. As the officers opened
> the door, gunshots were fired from inside the garage.
> Both Alterio and Delvalle returned fire into the garage
> and backed away. During the exchange, Delvalle shot
> Quinones, who fell to the ground and later died.  The
> victim, [Juan Moreno Castillo,] who was a guest at the
> party, was also shot and killed.
>
> Approximately twenty minutes after the gunfire began,
> [Cooke] and Santana surrendered. Santana was the first
> out of the garage, carrying an AK-47 type weapon.
> [Cooke] followed shortly thereafter. Upon entering the
> garage, the police found approximately thirty-five
> people lying down and a red nylon bag containing cash,
> jewelry and wallets. The bodies of the victim and
> Quinones were also discovered. Ballistics evidence
> showed that the AK-47 weapon Santana carried was the
> only weapon fired by any of the perpetrators and that
> the bullet that killed the victim was fired from an
> AK-47.

State v. Cooke, 89 Conn. App. 530, 533-34 (2005) [cited in Resp't

App. A]. The jury convicted the petitioner on all counts, and the

trial court, Owens, J., sentenced the petitioner to seventy years

of incarceration.  Santana v. Warden, No. CV054000840, 2010 WL

2817280, *1 (Conn. Super. Ct. Feb. 23, 2010) [Resp't App. A].

On direct appeal, the petitioner claimed that the trial

court improperly instructed the jury on felony murder. Santana,

89 Conn. App. at 555.  Specifically, he claimed that the trial

court's instruction permitted the jury to convict him even if a

police officer, and not a participant in the robbery, had fired
the gunshots that resulted in the victim's death.  <u>Id.</u> The
Appellate Court rejected this claim and affirmed the conviction,
holding that the instructions adequately explained the legal
principles of felony murder and that the jury was required to
find that the petitioner or another participant in the robbery
killed the victim for purposes of that charge.  <u>Cooke</u>, 89 Conn.
App. at 540-46. Thereafter, the Connecticut Supreme Court denied
the petitioner's petition for certification to appeal the
Appellate Court's decision.  <u>State v. Santana</u>, 275 Conn. 922
(2005).

    B. <u>State Habeas Proceedings</u>

    On December 24, 2008, the petitioner filed an amended
petition for writ of habeas corpus in the Connecticut Superior
Court.  Am. Pet [Resp't App. B].  He alleged that trial counsel,
Attorney Lawrence Hopkins, was ineffective in failing to:  (a)
adequately investigate the state's evidence; (b) adequately
investigate the forensic/ballistic evidence; (c) meaningfully
advise the petitioner of the evidence against him; (d) advise the
petitioner about his ability to plead guilty under the <u>Alford</u>
doctrine[1] (e) explain the state's ability to charge multiple
crimes for one incident; (f) meaningfully explain the state's

---

[1] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

position on plea negotiations; and (g) adequately advise the
petitioner concerning his sentence review rights.  Id*.*; Santana,
2010 WL 2817280.

Four witnesses testified on the petitioner's behalf at the
habeas trial:  Attorney Lawrence Hopkins, the petitioner himself,
Charles Haase, a ballistics expert, and Frank Stoll, a forensic
psychologist.  The respondent did not call any witnesses.  The
witnesses' testimony revealed the following facts.

Attorney Hopkins started representing the petitioner in
January of 2002, approximately one month after the crime
occurred.  Habeas Trial Tr. [Resp't App. C], at 31, 34.  Hopkins
testified that he reviewed the state's evidence with the
petitioner, including the state's theory and possible defense
strategies.  Id*.* at 19, 29-30.  Among the evidence he reviewed
with the petitioner was the ballistics evidence compiled from the
investigation, which showed that the bullet that killed the
victim was fired from the AK-47 rifle that the petitioner carried
during the commission of the crime.  Id*.* at 20, 93-94.  Hopkins
had no recollection of the petitioner ever requesting an
independent investigation into the state's ballistics evidence,
nor did he believe that there was a need for one.  Id*.* at 11-12.
Hopkins also reviewed written statements given by Ramon Valentin,
a co-conspirator in the case.  Id*.* at 15-16.  In both statements,
Valentin admitted to driving the three robbery participants to

7

the crime scene and implicated the petitioner as one of the participants.  Resp't App. I, J.  During pre-trial, Hopkins discussed the option of pleading guilty with the petitioner as well as his sentence exposure for the charged crimes.  Habeas Trial Tr. at 20-21.  However, the state did not offer any plea agreements nor was the petitioner interested in entering any agreements.[2]  Id. at 23, 26.  According to Hopkins, the petitioner was adamant in pleading not guilty and electing a jury trial.  Id. at 23.  With respect to the petitioner's sentence review right, Hopkins testified that the right to sentence review is ordinarily explained to defendants at sentencing.  Id. at 25.

  The petitioner acknowledged that Hopkins had explained to him the state's evidence and the nature of the charges, including the ballistics evidence.  Habeas Trial Tr. at 39-40, 47-50.  However, he testified that he was never presented with Valentin's written statements and that he had repeatedly requested Hopkins to hire an investigator and conduct an independent investigation into the ballistics evidence.  Id. at  40, 60.  Although he was provided with all the ballistics evidence compiled from the state's

---

[2] Hopkins testified that he had discussed with the state's attorney the possibility of a thirty-five year plea offer, but the case "[n]ever got to the point where [the offer] was worthy of discussion because [the petitioner] never indicated [that] he would accept any kind of offer."  Habeas Trial Tr. at 24.  By contrast, the petitioner testified that he would have accepted a thirty-five year offer had Hopkins conducted a more thorough investigation into the state's evidence.  Id. at 69-70.

investigation, the petitioner wanted an independent expert to look at the evidence. Id. at 64-66. Contrary to Hopkins' testimony, the petitioner testified that the state had extended multiple plea offers to him, starting with a twenty-five-year offer, and that Hopkins had strongly recommended that the petitioner accept the offer. Id. at 50-51, 59. The petitioner had communicated to Hopkins that he would be willing to accept the state's offer if Hopkins conducted an independent investigation into the state's evidence. Id. at 68-69. Hopkins did not, however, explain to the petitioner the possibility of entering an Alford plea. Id. at 51. The petitioner testified that he was, in fact, willing to plead guilty and would have done so had Hopkins better explained to him the strength of the state's case. Habeas Trial Tr. at 61. Although he was given a number of documents at sentencing, the petitioner testified that no one had explained to him his right to have his sentence reviewed. Id. at 70-71.

The petitioner's first expert witness, Charles Haase, specializes in ballistics investigations and is often hired as a consultant for attorneys in criminal cases. Habeas Trial Tr. at 79. Haase reviewed all of the police reports, photographs, and physical evidence compiled in the petitioner's case, including the ballistics evidence. Id. at 83. According to Haase, the .22 caliber bullet recovered from the victim's autopsy could have

9

been fired from an AK-47, the weapon carried by the petitioner during the commission of the crime.  Id. at 93.  It could not have been fired from a shotgun or pistol, weapons carried by the other participants in the crime.  Id. at 94.

The second expert witness, Frank Stoll, is a forensic psychologist.  Habeas Trial Tr. at 97.  He was hired to evaluate the petitioner and determine whether the petitioner had some form of psychological impairment which would have interfered with his decision to reject a plea offer and elect a trial.  Id. at 98-99. Stoll evaluated the petitioner using various psychological tests and concluded that "he had difficulty constraining the volume of his speech," "was extremely hard-headed . . . like a bulldog," and appeared isolated and withdrawn.  Id. at 102-04.  Stoll testified that these problems were consistent with someone who suffers from a nonverbal learning disability and/or Attention Deficit Disorder, which would have made it difficult for the petitioner to understand the ramifications of electing a trial over accepting a plea offer.  Id. at 109, 122.

After hearing the evidence, the state habeas court, Nazzaro, J., rejected the petitioner's claims and denied the petition.  Santana, 2010 WL 2817280.  With respect to the claim that Hopkins failed to adequately investigate the state's case, the habeas court concluded that the petitioner failed to satisfy his burden of showing prejudice by demonstrating that a more

10

thorough investigation would have revealed information that would have changed the outcome of the case. Id. at *6 (citing Holly v. Commissioner of Correction, 62 Conn. App. 170, 175 (2001)). The habeas court found that Attorney Hopkins obtained all relevant information regarding the case and reviewed the strength of the state's allegations with the petitioner, including the ballistics evidence and Ramon Valentin's statements placing the petitioner at the scene of the crime. Id. at *3-5. The petitioner did not present any new evidence that would have come to light following a further investigation on his behalf. Id. at *5-6.

In terms of the ballistics evidence, the state habeas court concluded that the petitioner failed to show what an independent expert or investigation would have revealed in comparison to the state's ballistics evidence. Id. at *4-5. Indeed, Haase's conclusions regarding the bullet recovered from the victim "nearly corroborated and confirmed" the state's ballistics investigation, which placed the murder weapon in the petitioner's hands. Id. at *4. Moreover, the habeas court found that Hopkins adequately explained the felony murder charge to the petitioner, including the principle that he could still be held liable under the statute even if he did not fire the fatal round. Id. at *7.

With respect to the petitioner's claim that Hopkins failed to meaningfully advise him of the evidence against him, the state habeas court found no deficient performance or prejudice.

Specifically, it found that Hopkins reviewed the entirety of the state's case with the petitioner and credited the petitioner's testimony that Hopkins "essentially implored [the petitioner] to plead guilty" given the strength of the state's case. Id. at *4. The petitioner could not satisfy his burden of showing prejudice with respect to this claim because it was not clear from the evidence that the state was willing to offer the petitioner any plea agreements, and "it was [the petitioner's] decision to proceed to trial." Id. at *3. Although the court acknowledged that the petitioner "wanted any plea to be conditioned according to the dictates he wished to design," it found no evidence that the state was willing to assent to the petitioner's terms or that any agreement would have been reached. Id. The court made an additional finding that, even if Hopkins failed to adequately explain the option of pleading guilty under the Alford doctrine, the petitioner was "steadfast in going to trial," and there was "no indication" that a more adequate explanation would have changed his decision. Id. at *8.

Finally, with respect to the claim that Hopkins failed to adequately advise the petitioner on his right to sentence review, the state habeas court found that claim unproven. Id. at *8. Relying on the criminal trial transcripts, the habeas court found that the petitioner "was specifically advised of not only his right to appeal but his right[] to sentence review" on the

record.  _Id_.  Moreover, the petitioner failed to show any likelihood that the Sentence Review Division would have found his sentence to be disproportionate or inappropriate based on the facts proven at trial.  _Id_. at *9.

The petitioner appealed the state habeas court's decision to the Connecticut Appellate Court, which dismissed the appeal in a per curium decision.  Santana v. Commissioner of Correction, 147 Conn. App. 902 (2013). The Connecticut Supreme Court subsequently denied the petitioner's petition for certification to appeal the Appellate Court's decision.  Santana v. Commissioner of Correction, 319 Conn. 901 (2015)

C. Federal Petition

On January 5, 2015, the petitioner filed the instant petition for writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254.  As best as the Court can surmise from his petition, the petitioner claims that the trial court improperly instructed the jury on felony murder and that trial counsel was ineffective for failing to:  (1) present independent forensic/ballistic evidence; (2) provide the petitioner with two statements by Ramon Valentin; (3) introduce evidence of a gun powder residue test; (4) adequately communicate with the petitioner throughout the criminal trial; (5) adequately prepare for trial and investigate the case; and (6) adequately explain to the petitioner his right to sentence review and his plea options.

13

On July 1, 2016, the respondent filed an answer to the petition denying the petitioner's claims.  With respect to the petitioner's instructional error claim, the respondent argues that the Appellate Court's decision comports with Fourteenth Amendment due process principles and constitutes a reasonable application of Connecticut Supreme Court and United States Supreme Court precedent on the felony murder statute and fair jury instructions.  With respect to the ineffective assistance of counsel claims, the respondent argues that the state habeas court reasonably applied the principles of Strickland v. Washington, 466 U.S. 668 (1984) and rejected those claims because the petitioner failed to satisfy his burden of showing that he was prejudiced by any deficient performance on the part of Attorney Hopkins.

## III.    Discussion

As shown below, all but two of the petitioner's claims have been fully adjudicated in state court.  The remaining claims are meritless and will be dismissed, pursuant to 28 U.S.C. § 2254(b)(2).  The Court will address each of the petitioner's claims in turn.

### A. Instructional Error Claim

The petitioner's first claim, alleging instructional error on the part of the trial court, was fully adjudicated in his direct appeal.  Thus, in order to prevail in the present petition

14

for writ of habeas corpus, the petitioner must establish that the Connecticut Supreme and Appellate Court decisions were either (1) contrary to, or an unreasonable application of, United States Supreme Court precedent; or (2) based on an unreasonable determination of the facts of the case.  28 U.S.C. § 2254(d).

      1. Relevant Legal Principles

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citation omitted).  A single challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. (internal quotation marks omitted); see also Estelle v. McGuire, 502 U.S. 62, 72 (1991) (the fact that a jury instruction was allegedly incorrect under state law was an insufficient basis for federal habeas relief).

"A jury charge in a state trial is normally a matter of state law." U.S. ex rel. Stanbridge v. Zelker, 514 F.2d 45, 50 (2d Cir. 1975), overruled on other grounds, Graham v. Hoke, 946 F.2d 982 (2d Cir. 1991).  Thus, a petitioner challenging a trial court's jury instruction in a federal habeas proceeding bears the heavy burden of establishing a violation of a constitutional

right.  See Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  In

satisfying his burden, it is not enough for the petitioner to

show that the challenged instruction is "undesirable, erroneous,

or even universally condemned."  Id. (internal quotation marks

omitted).  Rather, he must establish that the instruction "so

infected the entire trial that the resulting conviction violates

due process."  Id. (internal quotation marks omitted). "If the

charge as a whole is ambiguous, the question is whether there is

a reasonable likelihood that the jury has applied the challenged

instruction in a way that violates the Constitution."  Middleton,

541 U.S. at 437 (internal quotation marks omitted).

　　　　2. Analysis

　　　In reviewing the trial court's instructions on felony murder

the Connecticut Appellate Court applied a standard nearly

identical to that of the United States Supreme Court:

> The standard of review for an improper instruction on
> an element of an offense is whether it is reasonably
> possible that the jury was misled. . . . In determining
> whether it was indeed reasonably possible that the jury
> was misled by the trial court's instructions, the
> charge to the jury is not to be critically dissected
> for the purpose of discovering possible inaccuracies of
> statement, but it is to be considered rather as to its
> probable effect upon the jury in guiding [it] to a
> correct verdict in the case. . . . The charge is to be
> read as a whole and individual instructions are not to
> be judged in artificial isolation from the overall
> charge. . . . The test to be applied to any part of a
> charge is whether the charge, considered as a whole,
> presents the case to the jury so that no injustice will
> result. . . . The charge must be considered from the

> standpoint of its effect on the jury in guiding [it] to
> a proper verdict.

Cooke, 89 Conn. App. at 539-40 (internal quotation marks
omitted).  In responding to the petitioner's claim that the trial
court's instruction on felony murder was ambiguous because it did
not preclude the jury from convicting the petitioner on the basis
of a finding that a police officer, and not one of the
perpetrators, killed the victim, the Appellate Court reviewed the
entire charge and found no reasonable likelihood that such a
result occurred.  Id. at 545-46.  The Appellate Court noted that,
on several occasions during the charge, the trial court
instructed the jury that a conviction for felony murder requires
a finding that the victim's death was "caused by one of the
perpetrators."  Id. at 545 (emphasis in original).  Moreover, the
Appellate Court properly found that the trial court instructed
the jury that felony murder "encompasses any killing committed by
one of the criminals."  Id. at 546 (emphasis in original;
internal quotation marks omitted).  The Appellate Court's
conclusions have factual support by the criminal trial
transcripts, which were admitted as full exhibits during the
state habeas trial.  See Resp't App. CC, DD, EE, FF, GG, HH, II,
JJ.

    The Connecticut Appellate Court's conclusion, which is
primarily fact-based, constitutes a reasonable application of

United States Supreme Court precedent on proper instructional review.  The Appellate Court reviewed the trial court's charge in its entirety and properly found no reasonable likelihood of a due process violation.  The petitioner has not identified any United States Supreme Court precedent, and this Court is not aware of any, that conflicts with the Appellate Court's decision.  Therefore, the petitioner's instructional claim in his habeas petition is without merit and must be rejected.

The petitioner also claims that the trial court erred by failing to instruct the jury that a guilty verdict for felony murder requires a finding that the victim was not a participant in the crime.  This claim has never been raised in any state court and is, therefore, unexhausted.  Even if it had been exhausted, however, the petitioner would not be entitled to any relief because the trial court did, in fact, give that instruction.  It instructed the jury as follows:

> For you to find the defendants guilty of [felony murder], the State must prove the following elements beyond a reasonable doubt:  One, that the defendants acting alone or with one or more other persons committed the crime of robbery in the first degree . . . . Two, that the defendants or another participant in the crime of robbery in the first degree caused the death of another person.  Three, that the defendants or another participant caused the death while in the course of and in furtherance of the commission of the crime of robbery in the first degree or in flight therefrom. . . . <u>And, four, that the victim was not a participant.</u>  A participant is one who takes part or shares in the underlying crime.

18

Criminal Trial Tr. [Resp't App. JJ] at 18-19 (emphasis added).
The petitioner's claim is, therefore, meritless and shall be
denied despite the petitioner's failure to exhaust.  See 28
U.S.C. § 2254(b)(2) (petition may be denied on merits despite
failure to exhaust).

    A. Ineffective Assistance of Trial Counsel

    The petitioner raises several claims that his trial counsel,
Attorney Hopkins, deprived him of his Sixth Amendment right to
the effective assistance of counsel.  As best as this Court can
surmise from the petition, the petitioner claims that Attorneys
Hopkins was ineffective because he failed to:  (a) hire an expert
and conduct an independent investigation into the state's
ballistic evidence; (b) provide the petitioner with two
statements by Ramon Valentin; (c) adequately communicate with the
petitioner on all aspects of the case; (d) prepare for trial and
investigate the case; (e) adequately advise the petitioner during
plea negotiations and explain his right to sentence review; and
(f) introduce evidence of a negative gun powder residue test
result.  This Court will address each ineffective assistance of
counsel claim in turn.

    1. Relevant Legal Principles

    It is well-established that the Sixth Amendment right to the
assistance of counsel is "the right to the effective assistance
of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir.

203)(quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)).  A claim that counsel was ineffective is reviewed under the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail, the petitioner must demonstrate, first, that counsel's performance "fell below an objective standard of reasonableness" established by "prevailing professional norms." Additionally, the petitioner must show that this deficient performance caused prejudice to him.  <u>Id</u>. at 687.  In evaluating the performance prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Id</u>. at 689. To satisfy the prejudice prong of the <u>Strickland</u> test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  <u>Id</u>. at 694.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate both deficient performance and sufficient prejudice.  <u>Id.</u> at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.  <u>See</u> <u>id</u>. at 697.

The right to effective assistance of counsel applies to all "critical stages" of the criminal proceeding, including plea negotiations. <u>Missouri v. Frye</u>, 566 U.S. 134, 140 (2012) (internal quotation marks omitted).  Thus, claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test in <u>Strickland</u>.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985).  Trial counsel has a duty to communicate formal plea offers from the prosecution that may be favorable to the accused. <u>Frye</u>, 566 U.S. at 145.  The performance prong of <u>Strickland</u> remains the same in the plea bargaining context – the petitioner must show that counsel's advisement or representation fell below an objective standard of reasonableness.  <u>See</u> <u>Lafler v. Cooper</u>, 566 U.S. 156, 162-63 (2012).  To show prejudice from counsel's deficient advisement on a plea offer, the petitioner must demonstrate a reasonable probability that (1) they would have accepted the offer; and (2) that the agreement would have been entered without the prosecution rescinding the offer or the trial court refusing to accept it.  <u>Frye</u>, 566 U.S. at 147.

When pursuing a state-exhausted ineffective assistance claim in federal court, it is not enough for the petitioner "'to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly.'"  <u>Eze</u>, 321 F.3d at 124 (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002)).  Rather, he must show that the state

habeas court applied <u>Strickland</u> in an objectively unreasonable manner. <u>Id.</u>; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law"). A state court unreasonably applies established federal law "if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." <u>Williams</u>, 529 U.S. at 413.

2. <u>Analysis</u>

Because the Appellate Court issued a *per curium* decision dismissing the petitioner's appeal from the state habeas court's ruling, and the Supreme Court denied certification to appeal the Appellate Court's decision, this Court must look to the state habeas court's ruling for purposes of this review. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991) (a federal habeas court must "look through . . . subsequent unexplained denials" to the last state opinion addressing the merits of a petitioner's claim).

a. <u>Failure to Present Independent Forensic Ballistics Evidence</u>

The state habeas court rejected the petitioner's claim that Attorney Hopkins was ineffective in failing to hire an independent expert to examine the state's ballistic evidence because the petitioner failed to satisfy his burden of prejudice

under Strickland.  Specifically, he failed to show how, if at
all, an independent expert's conclusions regarding the ballistic
evidence would have undermined confidence in the jury's verdict.
In fact, the petitioner's own expert at the habeas trial, Charles
Haase, rendered a conclusion which "corroborated" the state's
ballistic evidence.   Haase testified that the .22 caliber
bullet recovered from the victim could have been fired from an
AK-47, the weapon seen carried by the petitioner during the
commission of the crime; Habeas Trial Tr. at 93; and it could not
have been fired from a shotgun or pistol, weapons carried by the
other participants in the crime.  Id. at 94.  Because the
petitioner failed to satisfy his burden of showing prejudice from
Hopkins' decision not to conduct an independent investigation
into the ballistic evidence, the state habeas court properly
rejected this claim.

        The state habeas court's decision comports with United
States Supreme Court precedent regarding the petitioner's burden
to show prejudice from counsel's failure to investigate or
present certain evidence.  In order to prevail, the petitioner
must demonstrate what the additional investigation would have
revealed and how it would have altered the outcome of the
criminal trial.  See Strickland, 466 U.S. at 694 (petitioner must
show reasonable probability that, but for counsel's
unprofessional errors, result of proceeding would have been

different); Wiggins v. Smith, 539 U.S. 510, 536 (2003) (finding reasonable probability of different outcome had jury been confronted with mitigating evidence that counsel failed to present). The petitioner has not shown how, if at all, the state habeas court's decision in this case conflicts with United States Supreme Court precedent.  Consequently, his claim of ineffective assistance of counsel based on a failure to investigate and present independent ballistic evidence must be rejected.

b. Failure to Provide the Petitioner with Valentin's Statements

The petitioner contends that Attorney Hopkins was ineffective in failing to provide him with two written statements by Ramon Valentin, the fourth participant in the crime who drove the petitioner, Cooke, and Quinones to the scene.  The state habeas court rejected this claim because the evidence showed that Attorney Hopkins did, in fact, review the substance of these statements with the petitioner.  Santana, 2010 WL 2817280, *4. Hopkins' testimony at the state habeas trial supports the habeas court's finding.  Habeas Trial Tr. at 15-19.

Based on the foregoing, the petitioner's present claim that Hopkins rendered ineffective assistance by failing to provide him with Valentin's statements constitutes a challenge to the state habeas court's factual finding.  In order for a federal court to reject a state habeas court's factual finding, it must conclude

based on a thorough review of the record that the finding "is not fairly supported by the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983) (internal quotation marks omitted); see also Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)(federal habeas courts are required "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence"). Here, the state habeas court's finding that Hopkins reviewed Valentin's statements with the petitioner is supported by Hopkins' testimony that he was aware of the contents of the statements and reviewed the entire state's case with his client. Habeas Trial Tr. at 15-19. The petitioner has not provided the state habeas court or this Court with any evidence to show the contrary, other than his self-serving testimony, which the state habeas court rejected. See Marshall, 459 U.S. at 434 ("Title 28 U.S.C. §2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Thus, the petitioner's claim that Hopkins did not provide him with those statements fails.

      c. Failure to Adequately Communicate with the Petitioner and Meaningfully Advise Him of the State's Evidence

In response to the petitioner's claim that Attorney Hopkins failed to adequately communicate with, and advise, the petitioner of the state's evidence, the state habeas court found no

deficient performance or prejudice.  Its finding that Hopkins
effectively advised his client regarding the evidence against him
is sufficiently supported by Hopkins' testimony that he discussed
the case with the petitioner, including the state's evidence, the
concept of joint liability, and possible defense strategies;
Habeas Trial Tr. at 19, 26-30. That finding is further supported
by the petitioner's testimony that Hopkins implored the
petitioner to enter a plea agreement based on the strength of the
state's case.  Id. at 59, 67.  The petitioner also testified that
Hopkins explained to him the nature and ramifications of the
felony murder charge and that the petitioner understood the
possibility of being convicted of that charge even if the jury
found that he did not fire the shot that killed the victim.  Id.
at 48-49.

Moreover, even if the petitioner could show that Hopkins'
advisement was deficient, the state habeas court properly
concluded that there was no prejudice based on Hopkins' testimony
that the petitioner was adamant in pleading not guilty and
electing a trial.  Id. at 20-21, 23-24, 26.  Hopkins also
testified that the state never extended any plea offers to the
petitioner due to the petitioner's unequivocal decision to
proceed to trial.  Id. at 23.  Based on this evidence, the state
habeas court properly found that the petitioner failed to show a
reasonable likelihood that he would have accepted a plea offer

26

but for Hopkins' deficient advisement.  Its conclusion comports
with the principles of Lafler and Frye regarding ineffective
assistance of counsel claims in the plea bargain process.
Because the state habeas court reasonably concluded that a more
favorable outcome for the petitioner but for any deficient
performance was unlikely, given the petitioner's vehement
position in pleading not guilty and the state's unwillingness to
offer any plea agreements, this Court cannot grant the petitioner
any relief on this claim.

> d. Failure to Adequately Prepare for Trial and
> Investigate the Case

Similarly, the state habeas court reasonably rejected the
petitioner's claim that Hopkins failed to adequately investigate
the state's case and prepare for trial.  It concluded, based on
Hopkins' testimony, that Hopkins obtained all relevant
information from the state, including police reports, witness
statements, and forensic evidence, met with the petitioner on a
number of occasions, and reviewed with him the strength of the
state's case and possible defense strategies.  Santana, 2010 WL
2817280, at *3.  Moreover, the state habeas court reasonably
concluded that the petitioner failed to present sufficient
evidence on what any additional investigation by Hopkins would
have revealed and how it would have led to a more favorable
outcome.  The petitioner has not shown that the state habeas

27

court's conclusion conflicts with United States Supreme Court precedent or that it unreasonably applied the principles of *Strickland* to the facts of the case.  Thus, the petitioner cannot prevail on his claim that Hopkins failed to adequately prepare for trial and investigate the case.

> ### e. Failure to Meaningfully Advise the Petitioner of his Plea Options and Right to Sentence Review

The petitioner further claims that trial counsel failed to adequately advise him on his plea options.  Specifically, he contends that Hopkins failed to adequately secure a plea agreement with the state on his behalf, explain that he could plead guilty under the Alford doctrine, and advise him of his right to sentence review.  With respect to the first two claims, that Hopkins failed to meaningfully advise the petitioner during plea negotiations and his right to plead guilty under the Alford doctrine, the habeas court reasonably found no prejudice.  It credited Hopkins' testimony that the state's attorney "was not likely to offer any particular plea agreement."  Santana, 2010 WL 2817280, at *8.  Hopkins testified that the state did not extend any plea offers to the petitioner because the petitioner was adamant in pleading not guilty and electing a trial.  Habeas Trial Tr. at 23-24, 26.  Because the habeas court's conclusion with respect to these claims was based on a credibility determination, this Court cannot afford the petitioner any relief

in his federal petition.  See Domosthenes v. Baal, 495 U.S. 731, 735 (1990) (a federal habeas court is required to accept the state court's factual findings on the issue of witness credibility).

The state habeas court also found no prejudice with respect to the petitioner's claim that Hopkins failed to advise him of his right to sentence review.  Specifically, the court found that the clerk advised the petitioner of his right to sentence review on the record during sentencing and that the petitioner failed to show any likelihood that the Sentence Review Division of the Superior Court would have modified his sentence but for any deficiency in advisement.  Santana, 2010 WL 2817280, at *8-9. Both findings are well-supported by the record.  The sentencing transcript, which was admitted as a full exhibit during the state habeas trial, shows that the petitioner was, in fact, advised of his right to sentence review.  Sentencing Tr. [Resp't App. AA] at 22.  Moreover, the petitioner has not presented any evidence that he would have received a sentence modification had Hopkins specifically advised him of his right to pursue such a modification.  Therefore, the petitioner's ineffective assistance of counsel claim fails in this regard.

       f. Failure to Introduce Evidence of a Gun Powder
          Residue Test

The petitioner also claims that trial counsel was

ineffective because he failed to introduce evidence of a negative gun powder residue examination. The petitioner has not exhausted this claim in state court but, nevertheless, cannot prevail because the claim is meritless. See 28 U.S.C. § 2254(b)(2) (district court may deny unexhausted petition on merits). The state habeas court rejected many of the petitioner's ineffective assistance of counsel claims on prejudice grounds because the state presented overwhelming evidence of the petitioner's guilt for felony murder. After reviewing the criminal trial transcripts submitted by the respondent, this Court concludes that any evidence of a negative gun powder test result would not have made any difference in the outcome of the trial. Several witnesses identified the petitioner as one of the perpetrators of the robbery who was carrying an AK-47 assault rifle. The bullet that struck the deceased victim was consistent with a projectile that was fired from that rifle, and even the petitioner's own ballistics expert during the state habeas trial agreed with that conclusion. Moreover, even if the evidence had showed that the petitioner did not fire a weapon during the robbery, it would not have made any difference in the jury's verdict on felony murder, which only requires a finding that any one of the participants caused the victim's death. This Court, therefore, rejects the petitioner's claim.

IV.   **Conclusion**

The Petition for Writ of Habeas Corpus is **DENIED.**  The Clerk is directed to enter judgment in favor of the respondent and close this case.

The court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

SO ORDERED at Hartford, Connecticut this 26th  day of July, 2017.

_____/s/ DJS_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE